UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> V. <br><br> LARS PALSBERG JORGENSEN, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 5:24-cv-212-KKC <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Plaintiffs Liberty Insurance Corporation and Liberty Mutual Personal Insurance Company (together, "Liberty") have filed a Motion for Judgment on the Pleadings (DE 25). For the following reasons, the Court will grant it.

### I.    Background

The dispute in this case is over whether various insurance policies Liberty issued to Defendant Lars Palsberg Jorgensen require Liberty to defend Jorgensen in a separate lawsuit filed against him and to indemnify him for any damages he may be required to pay in that lawsuit.

In that separate lawsuit, plaintiffs Briggs Alexander and Jane Doe assert claims against Jorgenson, who was the head coach of the University of Kentucky's ("UK") Swimming and Diving program from 2013 to 2023. *See Briggs Alexander, et al. v. University of Kentucky et al.*, No. 5:24-107 (E.D. Ky. Filed April 12, 2024) (the "Alexander Case"). The plaintiffs in the Alexander Case are two former members of UK's swim team and assistant swim coaches. (Alexander Case, DE 11 Amended Complaint ¶¶ 174, 263.) They assert they were "subjected to a sexually hostile environment, groomed, and sexually assaulted by

Coach Jorgensen." (*Id.* Introduction 2.) They allege that, "[t]hroughout his tenure at the University of Kentucky, Jorgensen exploited his position of power, fostering an unhealthy, sexualized environment for the women's swim team, grooming female athletes with the intention of committing future sexual abuse, and sexually assaulting and raping members of his female coaching staff that he directly supervised." (*Id.* ¶ 47.)

In addition to Jorgensen, the Alexander plaintiffs also assert claims against UK, which they allege was aware of Jorgensen's "predisposition to harass young women" and "chose to conceal their knowledge of Coach Jergensen's previous abuse of young women and refused to investigate [the] credible allegations" against him. (*Id.* Introduction 2-3.) They allege that, "[f]or ten years, members of the Athletic Department routinely witnessed Jorgensen's sexually inappropriate and abusive behavior, and credible allegations of inappropriate sexual allegations were made to UK's Athletic Department and Title IX Office, all of which were ignored or rebuffed." (*Id.* ¶ 48.) The Alexander plaintiffs also assert claims UK's Athletic Director Mitch Barnhart and Gary Conelly, who was the head coach of the university's Swimming and Diving program from 1991 to 2013.

As to Jorgensen, the Alexander plaintiffs assert claims for violations of due process and equal protection rights under 42 U.S.C. § 1983 (Counts III and IV) and state law claims for negligence (Count VI), battery (Count IX), and Intentional Infliction of Emotional Distress (Count X).

After the Alexander Case was filed, Liberty filed this action. It issued several homeowners insurance policies to Jorgensen. It asks the Court to declare that those policies do not obligate it to defend or indemnify Jorgensen in the Alexander Case. It now moves for the Court to enter judgment on the pleadings in its favor.

2

**II.     Analysis**

The only claim in the Alexander Case that Jorgensen argues is covered under the Liberty policies is the negligence claim against him. Liberty does not dispute that, if it is obligated to defend Jorgensen on any claim in the Anderson Case, then it must defend Jorgensen on every claim in that case. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy."); *see also Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 790 (6th Cir. 1987) ("Moreover, when a given lawsuit contains multiple claims, 'an insurer has a duty to defend, despite theories of liability asserted against an insured which are not covered under the policy, if there are any theories of recovery that fall within the policy.'").

"The duty to defend is broader than the duty to indemnify, meaning that if the insurers have no duty to defend [the insured] in the underlying lawsuits, they also have no duty to indemnify it for any damages it becomes obligated to pay in those lawsuits." *Westfield Nat'l Ins. Co. v. Quest Pharms., Inc.*, 57 F.4th 558, 562 (6th Cir. 2023) (citing *James Graham Brown Found., Inc.*, 814 S.W.2d at 279-80). To determine whether an insurer has a duty to defend its insured, the Court must compare the language of the underlying complaint to the terms of the policy. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019).

"The insurer has a duty to defend only if there is an allegation which potentially, possibly, or might come within the coverage of the policy." *Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky.App.1992). Under Kentucky law, Jorgensen has the burden of establishing that a claim in the Alexander Case is covered under the policies. *Liberty Corp. Capital Ltd. v. Sec. Safe Outlet*, 577 Fed. Appx. 399, 404 (6th Cir. 2014) (citing *N. Am. Acc.*

3

*Ins. Co. v. White*, 80 S.W.2d 577, 578 (1935)). Conversely, Liberty has the burden of demonstrating that an exclusion applies. *Id.*

Liberty issued several policies to Jorgensen. There is no dispute, however, that the policies all provide that Liberty must indemnify and defend Jorgensen for all claims against him "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." (DE 1-7 Policy CM-ECF p. 19; DE 26 Response 5.) The policies define an "occurrence" as "an accident. . . ,which results. . . in … 'Bodily injury'. . . or . . . 'Property damage.'" (DE 1-7 Policy CM-ECF p. 9.)

The complaint in the Alexander Case does not allege, however, any accident on Jorgensen's part.

The term accident is not defined in the policies. Thus, the Court looks to its "ordinary meaning, if that meaning is not ambiguous." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010). Kentucky courts have determined that the term "accident" is not ambiguous.

> An accident is generally understood as an unfortunate consequence which befalls an actor through his inattention, carelessness or perhaps for no explicable reason at all. The result is not a product of *desire* and is perforce accidental. Conversely, a consequence which is a result of a plan, design or intent is commonly understood as not accidental.

*Thompson*, 839 S.W.2d at 580 (citation omitted).

"Inherent in the plain meaning of 'accident' is the doctrine of fortuity." *Cincinnati Ins. Co.*, 306 S.W.3d at 74. This doctrine "encompasses intent and control." *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018). Thus, in determining whether an event is an "accident," the Court must look at: "1) whether the insured intended the event to occur; and 2) whether the event was a 'chance event' beyond the control of the insured." *Id.*

4

"If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured," then the event was an "accident," and the insurer must defend the insured. *Id*. But, if the insured either intended the event to occur or had control over the event, there is no accident and therefore no coverage. *Liberty Mut. Fire Ins. Co. v. Harris*, No. 3:10-CV-582-H, 2011 WL 1157745, at *4 (W.D. Ky. Mar. 28, 2011).

Plaintiff Jane Doe in the Alexander Case was a former swimmer for the UK swimming and diving program and later an assistant coach. She asserts that, throughout her relationship with Jorgensen, "he routinely made sexually explicit comments" and "he sought to control menial facets of Jane Doe's life, including her weight and appearance." (Alexander Case, DE 11 Amended Complaint ¶ 241.) In addition, Doe asserts that Jorgensen "groped her" and kissed her without her consent. (*Id.* ¶ 252.)

Plaintiff Alexander in the Alexander Case was formerly Bridgette Alexander. (Id. ¶ 79.) At the time of most of the allegations in the complaint, Alexander identified as female. Now, however, Alexander is known as Briggs Alexander and identifies as male. In accordance with Alexander's complaint, the Court will refer to Alexander as female and with female pronouns when discussing the events that occurred when Alexander identified as female. The Court will refer to Alexander as male and with male pronouns when discussing events that occurred from the time that Alexander began transitioning to male. (*Id.* ¶ 79 & n.9.)

Like Doe, Alexander was a former swimmer for the UK swim team and later an assistant coach. She alleges that, after moving to UK when she was 17, Jorgensen "isolated [her], sought to gain her trust, strove to control every facet of her life, and repeatedly made sexualized comments in an attempt to desensitize sexual topics." (Id. ¶ 84.) She alleges that, on phone calls, he would masturbate and ask her to do the same (*id.* ¶ 119) and that

5

he pressured her to send him nude photographs and would send her photographs of his erect penis and videos of him masturbating. (*Id.* ¶ 121.)

Later, Alexander accepted Jorgensen's offer to become volunteer assistant coach with the Swimming and Diving program, a position in which she directly reported to Jorgensen. (*Id.* ¶¶ 124-27.) She alleges that Jorgensen continued to make sexually explicit comments and requests and sought to control her life. (*Id.* ¶ 128.) He also began groping her and touching her genitalia and kissing her. (Id. ¶¶ 130, 133.) She alleges that Jorgensen "forcibly raped her" three times while she was a volunteer coach. (Id. ¶ 147, 159, 164.)

Alexander alleges that she left UK to coach at the University of Buffalo but returned to UK in July 2021 after Jorgensen offered her a position as assistant swim coach. (*Id.* ¶¶ 166, 174.) It is around this time that Alexander began transitioning to a man. (*Id.* ¶ 174 n. 14.) Alexander alleges that Jorgensen resumed making sexually explicit comments and sexually assaulting him. (*Id.* ¶¶ 176, 178.) Alexander alleges that, at the end of a party at Jorgensen's house, Jorgensen again "forcibly raped" him. (*Id.* ¶ 188.) Alexander later resigned as assistant coach. (*Id.* ¶ 191.) Nevertheless, Jorgensen continued to sexually harass Alexander through text messages. (*Id.* ¶ 193-94.) Alexander alleges that, at one meeting during this time, Jorgensen struck him, forcefully kissed and fondled him, and forced him to perform oral sex on Jorgensen. (*Id.* ¶ 204-06.)

Thus, the Alexander plaintiffs allege that Jorgensen purposefully isolated and sought to control them and sexually harassed and sexually assaulted them. These are actions that would require Jorgensen's intent. Further, these are actions that Jorgensen would have complete control over; they are not "chance events." Because the Alexander

plaintiffs do not allege damages caused by an accident, Liberty has no duty to defend Jorgensen in the Alexander Case.

While the Alexander plaintiffs assert a negligence claim, "[a]n insurer's duty to indemnify does not depend solely upon the terminology used in a plaintiff's pleadings." *Am. Just. Ins. Reciprocal v. Ohio Twp. Ass'n Risk Mgmt. Auth.*, 121 F.3d 707, 1997 WL 415317, at *2 (6th Cir. 1997). "Rather, in determining whether coverage exists, a court must focus on the basis for the injury and not the nomenclature of the underlying claim. It must examine the plaintiff's allegations to determine the substance, as opposed to the mere form, of the complaint." *Id. See also Blankenship v. Shelter Mut. Ins. Co.*, No. 23-5247, 2023 WL 6799581, at *4 (6th Cir. Oct. 16, 2023) ("[S]imply pleading negligence does not compel the insurer to defend the insured"); *Liberty Mut. Ins. Co. v. Est. of Bobzien by & through Hart*, 377 F. Supp. 3d 723, 746 (W.D. Ky. 2019) ("Clearly, the allegations . . . indicate that Hugo intended to smoke in the presence of his children. That his decision to do so has been labeled as negligent does not change the intentional nature of the act.").

If there were any doubt remaining as to coverage, Liberty has met its burden of proving that at least one of the policy exclusions applies. Under the policies, coverage is excluded for "'bodily injury'. . . [a]rising out of sexual molestation, corporal punishment or physical or mental abuse. . . ." (DE 1-7 Policy CM-ECF pp. 19-20; DE 26 Response 10.) Neither the term "molestation" nor the term "abuse" is defined in the policies. Accordingly, the Court looks to their ordinary meaning if that meaning is not ambiguous.

The term "molest" is defined as "to make unwanted or improper sexual advances towards (someone) *especially*: to force physical and usually sexual contact on (someone)" and "to annoy, disturb, or persecute (a person or animal) especially with hostile intent or injurious effect." MOLEST Definition & Meaning - Merriam-Webster. The definition of "abuse" includes "a corrupt practice or custom," "language that condemns or vilifies usually

7

unjustly, intemperately, and angrily" or "physical maltreatment." ABUSE Definition & Meaning - Merriam-Webster.

"Under Kentucky law, courts broadly construe the phrase 'arising out of' in insurance contracts, requiring only some causal relation or connection between the claim and the underlying event." *State Auto Prop. & Cas. Ins. Co. v. J.R.E.*, No. 3:13-CV-00974-H, 2014 WL 3955490, at *4 (W.D. Ky. Aug. 13, 2014) (citation omitted and internal quotations omitted); *see also Cole's Place, Inc.*, 936 F.3d at 406 ("Several decisions of Kentucky courts and this court have held that similar 'arising out of' language broadly applied to any litigation causally related to excluded torts or other wrongs, including wrongs allegedly committed by someone other than the insured party.").

The negligence claim against Jorgensen is directly related to the Alexander plaintiffs' claims that Jorgensen made unwanted sexual advances toward them, forced physical contact upon them, and physically and verbally abused them. These alleged acts are the basis for all the claims asserted against Jorgensen in the Alexander Case. Accordingly, Liberty has met its burden of proving that this exclusion applies.

Because Liberty has no duty to defend Jorgensen, it necessarily has no duty to indemnify Jorgensen for any damages he may be held liable for in that action. As discussed, an insurer's obligation to defend is broader than its duty to indemnify. *Westfield Nat'l Ins. Co.*, 57 F.4th at 558.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Liberty's Motion for Judgment on the Pleadings (DE 25) is GRANTED;

2) Liberty has no duty to defend Jorgensen in the Alexander Case or to indemnify him for any damages he may be obligated to pay in that case; and

3) The Court will enter judgment consistent with this opinion.

This 4th day of September, 2025.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY